UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-485-H

KAREN M. HENRY                                                                                          PLAINTIFF

V.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Karen Henry, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability insurance benefits. At issue is whether the administrative law judge erred when determining that Ms. Henry retains the residual functional capacity to perform light work, including her past relevant work. Ms. Henry asserts that he failed to afford appropriate weight to the opinion of her treating psychiatrist and failed to consider the effect her mental limitations would have on her residual functional capacity at the final two steps of his determination. After reviewing the the administrative record, the Court will grant Ms. Henry's motion for summary judgment and remand the decision of the Commissioner of Social Security.

I.

Ms. Henry filed her application for disability benefits on April 15, 2008.[1] She alleges she became disabled on April 2, 2007,[2] but, because she drew unemployment benefits for a short time after that, she later requested a benefit start date of August 26, 2007.[3] In her application,

---

[1] Administrative Record at 119 (docket no. 8)(hereafter "R. at ___")(in his opinion, however, the administrative law judge erroneously stated that the date of filing was March 17, 2008 (R. at 17).
[2] R. at 119-120.
[3] R. at 17, 39-40.

Ms. Henry stated that she was unable to work due to a variety of physical impairments and depression.[4] Her request for benefits was denied initially and on review, so she timely requested a hearing before an administrative law judge.

Ms. Henry's hearing took place on January 27, 2010.[5] She appeared with counsel and testified, along with her husband and a vocational expert retained by the Social Security Administration.[6] On May 7, 2010, the administrative law judge entered an opinion that Ms. Henry was not disabled because she has the residual functional capacity to perform light work with certain physical limitations, including her past relevant work as a bookkeeper.[7] Although the administrative law judge determined that Ms. Henry suffered from the severe impairment of depression, he imposed no mental limitations when he determined her residual functional capacity and deemed her not disabled.[8]

Ms. Henry timely appealed at both the administrative level and to this Court. In addition to her fact and law summary, Ms. Henry also filed a motion for summary judgment[9] that is pending before the Court.

## II.

A district court may not try a Social Security appeal "de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.* (citing *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984)). Rather, the Court must affirm the conclusions of the Commissioner of Social Security absent a determination that the administrative law judge who made the determination regarding Ms. Henry's entitlement to benefits failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also*

---

[4] R. at 130.
[5] R. at 37-71.
[6] *Id.*
[7] R. at 17-27.
[8] R. at 21-27.
[9] Docket no. 8

*Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jordan,* 548 F.3d at 422 (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

With respect to the correct legal standards, administrative law judges must perform a five-step analysis to determine whether a claimant is disabled within the meaning of the Social Security Act:

1. If the claimant is engaged in substantial gainful activity, she is not disabled.

2. If the claimant is not engaged in substantial gainful activity, but her impairment is not "severe," she is not disabled.

3. If the claimant is not engaged in substantial gainful activity and is suffering from a "severe" impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. Otherwise, if the claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

20 C.F.R. § 404.1520; *see also Jordan,* 548 F.3d at 422.

The claimant bears the burden of proof with respect to the first four steps. *Jordan*, 548 F.3d at 422. The burden shifts to the SSA with respect to the fifth step, however, and at that step the Social Security Administration bears the burden of proving that there are available jobs in the national economy that the claimant is capable of performing. *Id.* at 423 (citing *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391-92 (6th Cir.1999)). At step five the administrative law judge must employ the grids, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, after determining that the claimant does not meet the requirements of a listed impairment but is nevertheless incapable of

performing past relevant work. *Id.* (citing *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir.1990)). The claimant, however, retains the burden of proving the extent of her residual functional capacity. *Id.* (citing *Her,* 203 F.3d at 392).

### III.

In his opinion, the administrative law judge determined that Ms. Henry suffers from the severe physical impairment of recurrent Epstein-Barr virus and the severe mental impairment of depression, but that neither of these impairments, singly or in combination, met or equaled a listed impairment.[10] Ms. Henry challenges neither of these findings.

She does, however, challenge Finding 5, in which the administrative law judge determined that she has the residual functional capacity to perform light work with certain exertional and postural limitations.[11] Ms. Henry does not assert any error with respect to the analysis of her physical impairments or limitations, but does argue that when the administrative law judge determined there were no limitations on her residual functional capacity that are attributable to her mental impairment, he improperly rejected the opinion of her treating psychiatrist, and ignored the assessments of a state agency examining psychologist and two reviewing consultants.[12]

In support of his determination that Ms. Henry could perform light work without any limitations with respect to her mental impairment, the administrative law judge rejected the mental health limitations identified by the mental health providers asked to perform functional capacity assessments, in favor of his own review of Ms. Henry's treatment records (chiefly those from a brief stint of therapy with a student intern at the Archdiocese of Louisville, who did not

---

[10] R. at 19-21.
[11] R. at 21-25. Exertional limitations are those that affect a claimant's ability to meet the strength demands of jobs (*e.g.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. § 404.1569a(b).
[12] Pl's Mot. Summ. J. at 3-7 (docket no. 8).

4

perform a functional capacity assessment) and his interpretation of Ms. Henry's testimony regarding her daily activities:

> [Ms. Henry's] work attempts demonstrate the inconsistencies in the claimant's testimony as to the level of symptoms that she was experiencing throughout that period and lend little support to the claimant's assertion that she is unable to perform any substantial gainful activity….There is no evidence of a sharp decline in the claimant's mental or physical abilities since [2007]. To the contrary, mental health records show that throughout 2009, the claimant made excellent progress and continued to feel better….This evidence…of the claimants' activities of daily living including some level care driving, shopping, manage funds, navigating the internet, socializing and performing a number of work-like tasks clearly demonstrate that the claimant is capable of performing some work [*sic*].[13]

Although all of the mental health evaluators asked to render an opinion regarding Ms. Henry's functional capacity agreed that, at a minimum, she had moderate limitations on the complexity of tasks she could perform, her stress tolerance, her ability to sustain attention and concentration, and her ability to respond appropriately to supervisors and co-workers,[14] the administrative law judge did not include any such limitations in her residual functional capacity.[15] Nor did he ask the vocational expert present at the hearing the extent to which any of these limitations, either singly or in combination, would affect Ms. Henry's ability to perform her past relevant work, or any other work that exists in the national economy.[16]

---

[13] R. at 25.
[14] *See* R. at 302-304, 316-17, 320-22, 345, 349-50, 438-40.
[15] R. at 21-24.
[16] R. at 65-70.

**IV.**

Ms. Henry asserts that the administrative law judge committed reversible error in Findings 5 and 6 when he failed to include any limitations attributable to her mental impairment when he determined her residual functional capacity and then, based on that erroneous determination, failed to ask appropriate questions during the vocational expert's testimony at the hearing.

As noted above, the Court cannot try this case *de novo,* or remand the case simply because there exists sufficient evidence to support a conclusion different than the one reached by the administrative law judge. Rather, if there exists substantial evidence in the record to support the administrative law judge's decision, and there has been no error of law, the Court must affirm. *Jordan,* 548 F.3d at 422.

**A. The Determination of Ms. Henry's Residual Functional Capacity**

In his opinion, the administrative law judge observed that Ms. Henry has received "various forms of treatment for her depressive …symptoms" but commented that "the record reveals that the treatment has been generally successful in improving her symptoms," because "the claimant engaged in a number of mentally and physically demanding activities[17] since her alleged onset date which are inconsistent with her allegations that she … is unable to perform any level of work, even with significant restrictions," she retains the residual functional capacity to perform light work with only postural limitations.[18] The Court concludes that these statements are not supported by the reliable evidence in the record as a whole.

---

[17] Specifically, the administrative law judge found that Ms. Henry's "ability to take real estate classes and to successfully complete the assignments and training necessary to obtain her appraisal license, in addition to starting a sewing business, are inconsistent with disabling mental limitations." (R. at 24).

[18] R. at 24.

The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the opinion of the claimant's treating source. 20 C.F.R. §§ 404.1527(d), 416.927(d). When a treating source's opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence in the record, it should receive controlling weight. *See* Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011). If an administrative law judge determines that a treating source's opinion is not entitled to controlling weight, he must nonetheless determine how much weight the opinion is entitled to, and must set forth in the administrative decision good reasons for the weight given to that medical opinion. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Wilson v. Commissioner of Social Security,* 378 F.3d 541, 545-546 (6th Cir. 2004).

In February 2010, after treating Ms. Henry for over two years, Dr. Denise Winland (a psychiatrist) opined that Ms. Henry is unable to work in any capacity due to chronic depression, anxiety, chronic pain, fatigue, memory problems and concentration problems.[19] However, the administrative law judge deemed Dr. Winland's opinion inconsistent with his own evaluation of Ms. Henry's capabilities.[20] A thorough review of the record reveals that much of the administrative law judge's reasoning lacks proper support. To begin with, the state agency the consultative psychological examiner (Jessica Huett, Psy. D.), and the state agency psychological consultants never addressed Dr. Winland's opinion regarding Ms. Henry's relative ability to perform work-related tasks.[21] Thus, no medical opinion in the record indicates that Dr. Winland's assessment of Ms. Henry's limitations is inconsistent with clinical findings in the

---

[19] R. at 439.
[20] *R.* at 24..
[21] *See* R. at 301-304, 306-323, 335-51.

7

treatment records or the level of treatment plaintiff received. Even if there were, though, there are noteworthy weaknesses in the other opinion testimony in the record.

Dr. Huett assessed Ms. Henry as "having major depressive disorder, recurrent, improved with current medications," even though the only discussion of Ms. Henry's medication in Dr. Huett's report is Ms. Henry's observation that the Cymbalta was taking "did not help."[22] Moreover, when Dr. Huett examined Ms. Henry, she had only been taking medications for a few months, and her dosage and treatment protocol were changed and adjusted for many months thereafter with varying degrees of success.[23] Moreover, Dr. Huett's opinion was prepared without benefit of the twenty-one months of mental health treatment records that followed it. Considering this, it is questionable that the administrative law judge could give her findings "significant weight."[24] It is similarly questionable that the administrative law judge afforded "great weight'' to the mental residual functional capacity assessments performed by two non-examining state agency reviewers, because they were performed in June and September 2008 and not updated subsequently to reflect additional therapy notes or prescriptions issued by Dr. Winland.[25]

Regardless, the opinions of the state agency examining and reviewing consultants are noteworthy in that they all agree that Ms. Henry has at least some moderate limitations on her ability to perform work-related tasks that are due to her mental impairment.[26] Yet, and in spite of affording the opinions of the state agency consultants "great weight," the administrative law

---

[22] R. at 302-303.
[23] *See* R. at 422-437.
[24] R. at 23.
[25] *See* R. at 24-25, 306-23 and 335-51 (indicating moderate restrictions in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the general public, the ability to respond appropriately to changes in the work setting, and the ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable interruptions caused by psychological symptoms).
[26] R. at 302-304, 316-17, 320-22, 345, 349-50.

judge does not appear to have included their suggested limitations in his residual functional capacity assessment.[27]

The most significant problem with the decision below is its undue reliance upon Ms. Henry's brief therapy sessions with the Archdiocese of Louisville in the first part of 2009.[28] This Court finds it noteworthy that: (1) the "therapist" conducting those sessions was a student/intern completing her practicum placement,[29] so (2) regardless of the putatively "excellent" progress made by Ms. Henry, the therapy would have ended anyway, because Ms. Powell's practicum ended,[30] and (3) within just a few weeks of terminating her therapy at the Archdiocese and having made such "excellent" progress that readied her to rely on self-help,[31] Ms. Henry returned to the Archdiocese for more therapy.[32] The Court concludes that the administrative law judge provided an inadequate explanation as to why the treatment notes from a student intern chiefly should be entitled to controlling weight with respect to Ms. Henry's functional assessment, rather than the opinions of her treating psychiatrist, or even those of the state agency examining Doctor of Psychology and the two record-reviewing consultants.[33] Accordingly, the Court will grand Ms. Henry's request for remand.

### B. The Examination of The Vocational Expert

Ms. Henry's also alleges that the administrative law judge erred by not properly questionining the vocational expert present at her hearing. Because this Court has already

---

[27] R. at 21-25.
[28] R. at 24, 361-97.
[29] R. at 363.
[30] *Id.*
[31] R. at 362.
[32] R. at 435 (the administrative record contains no notes from those treatment sessions, however).
[33] This is not to say, however, that reliance on the opinions of state agency consultants, which were prepared without benefit of a significant number of treatment records generated over many subsequent months or Dr. Winland's opinion, would have been sufficient.

determined that remand is proper for the reasons stated above, it will not make any conclusive determinations with respect to this issue.

## V.

The Court concludes that the undue reliance on the records of a student intern counseling Ms. Henry instead of the contemporaneous, preceding, and antecedent treatment notes, prescription records, and opinion of her treating psychiatrist, or any of the functional capacity assessments prepared by Dr. Winland or the state agency consultants. Consequently, the Court will grant Ms. Henry's motion for summary judgment and, pursuant to 42 U.S.C. §405(g) enter an order remanding the decision of the Commissioner of Social Security for further proceedings consistent with this Memorandum Opinion.

DATE:

cc: counsel of record